UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD B. HUBBUCH,<br><br>Plaintiff,<br><br>- against -<br><br>CAPITAL ONE, N.A. *and* JOHN DOE STAFF ATTORNEY NO. 1,<br><br>Defendants. | 25-CV-406 (VSB) (RWL)<br><br>**OPINION & ORDER** |

Edward B. Hubbuch
Brooklyn, NY
*Pro Se Plaintiff*

Jeffrey James Chapman
Philip A. Goldstein
McGuire Woods LLP
New York, NY
*Counsel for Defendant Capital One, N.A.*

Christopher Ryan Murray
Murray Legal, PLLC
Mineola, NY
*Counsel for Defendant Funding Metrics, LLC*

VERNON S. BRODERICK, United States District Judge:

Pro se Plaintiff Edward B. Hubbuch, ("Plaintiff" or "Hubbuch"), brings claims against Defendants Capital One, N.A., ("Capital One"), John Doe Staff Attorney No. 1, and Funding Metrics, LLC, (("Funding Metrics") and collectively "Defendants"). This Opinion & Order addresses Magistrate Judge Robert W. Lehrburger's report and recommendation, (Doc. 132 ("Report" or "Rep.")), which addressed and made recommendations concerning five motions: "(1) Capital One's motion to dismiss the Amended Complaint because it exceeds the scope of

leave to amend and fails to state a plausible claim; (2) Funding Metrics' motion to dismiss based on lack of subject matter jurisdiction, res judicata, and failure to state a claim; (3) Funding Metrics' motion for sanctions pursuant to Federal Rule of Civil Procedure 11 ('Rule 11') against Hubbuch for bringing and maintaining frivolous claims; (4) Hubbuch's Rule 11 motion for sanctions against Funding Metrics; and (5) Hubbuch's motion to disqualify Funding Metrics' attorneys." (*Id.* at 2.) This Opinion & Order also addresses Hubbuch's objections to the Report, (Doc. 135), and his motion for leave to file a reply in support of his objections, (Doc. 140). For the reasons that follow, I ADOPT Magistrate Judge Lehrburger's Report in full. Hubbuch's objections are OVERRULED, and Hubbuch's motion for leave to file a consolidated reply is DENIED.

## I. Factual Background[1]

Hubbuch is the owner of Memphis Seoul, which was a restaurant in Brooklyn, New York. (FAC ¶ 19.) In July 2024, Hubbuch required "short-term financing" for his business, and contacted a banker at Capital One for assistance. (*Id.* ¶¶ 20–21.) The Capital One banker, Mohammed Alkhatib, ("Alkhatib"), referred Plaintiff to Naftali Mercedes, ("Mercedes"), a third-party broker of "merchant cash advance[s]." (*Id.* ¶¶ 22–24.) According to Hubbuch, the banker did not warn him that Mercedes had been barred by the Financial Industry Regulatory Authority ("FINRA") in 2012 from representing himself as a financial professional or providing financial advice. (*Id.*) On August 20, 2024, Alkhatib texted Hubbuch and "insist[ed]" that "all further correspondence" be sent to his "private email account . . . instead of to the Capital One email

[1] This factual background is derived from the allegations in Plaintiff's first amended complaint. (Doc. 74 ("Amended Complaint" or "FAC").) I assume the allegations set forth in the Amended Complaint to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings in this Opinion & Order.

account." (*Id.* Ex. I.)

On September 17, 2024, Memphis Seoul signed a "merchant cash advance" agreement with Funding Metrics ("Agreement"), that was brokered by Mercedes. (*Id.* ¶ 25.) The parties to the Agreement are Funding Metrics, Memphis Seoul, and Hubbuch as Guarantor. (*Id.* Ex. D.) The Agreement provided Memphis Seoul with $48,955 and it agreed to pay back a total of $71,000. (*Id.*) The Agreement provided for daily withdrawals from Memphis Seoul's bank account to Funding Metrics of $294.95. (*Id.*) Memphis Seoul's bank account was maintained through Capital One. (*Id.*)

The daily withdrawals resulted in overdraft fees on Memphis Seoul's Capital One bank account. (*Id.* ¶¶ 33–38.) Capital One reversed some of these fees, including nine overdraft fees on November 8, 2024 that caused $315 to be credited back to Memphis Seoul. (*Id.*) Hubbuch threatened litigation and Alkhatib "initiated four separate phone calls to Plaintiff—calls that veered from damage control into outright intimidation." (*Id.* ¶ 45.)

On November 6, 2024, Hubbuch filed a lawsuit in New York State Court against Capital One, Funding Metrics, and Mercedes. (*Id.* ¶ 40.) Hubbuch claimed that the Agreement was an unenforceable, usurious loan. (*Id.* ¶¶ 39–42.) On November 27, 2024, Funding Metrics moved to dismiss that suit. (Doc. 109-18.) Capital One moved to dismiss claims against it on December 3, 2024, and subsequently Hubbuch voluntarily discontinued those claims rather than oppose that motion substantively. (Doc. 109-6.) On December 6, 2024, the court granted Funding Metrics' motion to dismiss and entered judgment for Funding Metrics. (Doc. 109-2.)

On December 5, 2024, Hubbuch filed a second lawsuit in state court against Funding Metrics and its attorney Christopher R. Murray, alleging defamation. (Doc. 91-5.) Funding Metrics filed its answer with counterclaims against Hubbuch and Memphis Seoul for the amount

of arrears due pursuant to the Agreement on January 10, 2025. (Doc. 91-7.) Funding Metrics filed a motion to dismiss on April 18, 2025. (Doc. 91-8.) On May 12, 2025, the state court issued an order in favor of Funding Metrics and against Hubbuch and Memphis Seoul, granting default judgment on the counterclaims and awarding $71,946.98 in damages. (Doc. 91-9.) Funding Metrics sought to enforce this judgment against Memphis Seoul's Capital One account, which caused Capital One to restrain Memphis Seoul's account with a combined negative balance of $159,010.74. (FAC ¶ 53.)

## II. Procedural History

On January 10, 2025, Hubbuch filed the instant lawsuit against Capital One following the restrictions obtained by Capital One on Memphis Seoul's bank account. (Doc. 1.) This case was reassigned from Chief Judge Laura Taylor Swain to me on January 22, 2025. The following day, I referred this case to Magistrate Judge Lehrburger for general pretrial management. (Doc. 7.)

On February 10, 2025, Capital One moved to dismiss Plaintiff's complaint. (Doc. 25.) On March 4, 2025, I entered an Amended Order of Reference, referring this motion to Magistrate Judge Lehrburger for a report and recommendation. (Doc. 35.) On March 7, 2025, Hubbuch moved for Rule 11 sanctions against Capital One's counsel. (Doc. 36.) On May 21, 2025, Hubbuch filed an emergency motion for a temporary restraining order. (Doc. 54.)

On June 11, 2025, Magistrate Judge Lehrburger issued a twenty-nine-page report and recommendation recommending that Capital One's motion to dismiss be granted, that Plaintiff be given leave to amend his complaint, and that Hubbuch's motion for sanctions be denied. (Doc. 64 at 1.) Neither party filed any objections to the Report. On July 15, 2025, I issued an Opinion & Order adopting Magistrate Judge Lehrburger's report and recommendation in full. (Doc. 73 ("Opinion" or "Op.").)

On July 20, 2025, Plaintiff filed the Amended Complaint, adding Funding Metrics as a party and asserting eight state law claims against Capital One as well as violations of the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), Truth in Lending Act, ("TILA"), Electronic Fund Transfer Act, ("EFTA"), and state law claims against Funding Metrics. (*See generally* FAC.) On July 25, 2026, I issued an Amended Order of Reference to Magistrate Judge Lehrburger for a report and recommendation on all dispositive motions. (Doc. 78.)

On August 4, 2025, Capital One filed its motion to dismiss Plaintiff's Amended Complaint, (Doc. 82), accompanied by a memorandum of law, (Doc. 83), and a declaration of Philip A. Goldstein, (Doc. 84). Plaintiff filed his opposition on August 13, 2025. (Doc. 88.) On September 15, 2025, Capital One filed a reply in support of its motion, (Doc. 96), with a declaration from Philip A. Goldstein in support, (Doc. 97).

On August 26, 2025, Funding Metrics filed its motion to dismiss Plaintiff's Amended Complaint, (Doc. 89), accompanied by a memorandum of law, (Doc. 90), and a declaration, (Doc. 91). Plaintiff filed his opposition on August 27, 2025. (Doc. 94.) On September 26, 2025, Funding Metrics filed its reply, (Doc. 117), and a notice of supplemental authority concerning a ruling in a related state court proceeding, (Doc. 118).

On September 19, 2025, Plaintiff moved for sanctions against Funding Metrics and its attorney, Christopher R. Murray ("Murray"), (Doc. 102), and filed a memorandum of law, (Doc. 103) and a declaration, (Doc. 104), in support. On October 2, 2025, Funding Metrics filed its opposition to Hubbuch's sanctions motion, (Doc. 123), with an accompanying declaration from Murray, (Doc. 122).

Funding Metrics filed its own motion for sanctions on September 20, 2025, (Doc. 107), supported by a memorandum of law, (Doc. 108), and a declaration from Murray, (Doc. 109). On September 26, 2025, Hubbuch filed its opposition to Funding Metrics' sanctions motion, (Doc. 119), supported by a declaration, (Doc. 120). On October 3, 2025, Funding Metrics filed its reply in support of its sanctions motion. (Doc. 125.)

On September 20, 2025, Hubbuch moved to disqualify Murray, (Doc. 111), and his motion was accompanied by a memorandum of law, (Doc. 112), and a declaration, (Doc. 113). On October 6, 2025, Funding Metrics and Murray filed their opposition to Plaintiff's motion to disqualify Murray. (Doc. 126.)

Hubbuch filed four more letters on the docket between October 13, 2025 and January 16, 2026 regarding, "Funding Metrics' contradictory litigation positions," (Doc. 128), "Suspected Fraudulent Marshals Notice Allegedly Used for Retaliation and Intimidation," (Doc. 129), "Supplemental Authority," (Doc. 130), and further supplemental authority, (Doc. 131). On February 10, 2026, Magistrate Judge Lehrburger issued the seventy-two-page, well-reasoned, and thorough Report. (Rep.) On February 12, 2026, Hubbuch filed a letter motion for leave to file excess pages for his objections, (Doc. 133), which I granted on February 18, 2026, (Doc. 134). On February 24, 2026, Plaintiff filed his objections. (Doc. 135 ("Objs.").) On March 10, 2026, Capital One filed its response to Hubbuch's objections, (Doc. 136), accompanied by a declaration of Philip A. Goldstein, (Doc. 137). On March 10, 2026, Funding Metrics also filed a response. (Doc. 139.) On March 11, 2026, Plaintiff requested leave to file a reply. (Doc. 140.) On August 19, 2026, Plaintiff requested leave to file supplemental objections, (Doc. 144), which I denied on August 24, 2026, (Doc. 148).

## III. Legal Standard

After a magistrate judge issues a report and recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept the report and recommendation of a magistrate [judge], to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Trs. of Drywall Tapers & Pointers Loc. Union No. 1974 Benefit Funds v. Cite C Corp.*, No. 17-CV-9304, 2019 WL 1745743, at *1 (S.D.N.Y. Apr. 18, 2019) (internal quotation marks omitted). Where specific objections are made, the court is obligated to review the contested issues de novo. *See* Fed. R. Civ. P. 72(b)(3). However, when "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments," the court will review the report only for clear error. *Jones v. Smith*, No. 09-CV-6497, 2012 WL 1592190, at *1 (S.D.N.Y. May 7, 2012) (collecting cases). "Moreover, parties may not raise new arguments for the first time in objections to a report and recommendation." *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 120 (S.D.N.Y. 2023). , Further, "[i]f a party . . . simply relitigates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Antrobus v. NYC Dep't of Sanitation*, No. 11-CV-5434, 2016 WL 5390120, at * 1 (E.D.N.Y. Sept. 26, 2016); *see also Pena v. Rivera*, No. 05-CV-3109, 2006 WL 2529771, at *1 (S.D.N.Y. Aug. 31, 2006). Even when exercising de novo review, a "district court need not . . . specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety." *Morris v. Local 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006) (summary order).

Pro se complaints are afforded "special solicitude" and must be interpreted to "raise the

strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted). However, a pro se litigant is still "obligated to comply with the relevant rules of procedural and substantive law." *Doe v. Torres*, No. 05-CV-3388, 2006 WL 290480, at *3 (S.D.N.Y. Feb. 8, 2006). Accordingly, "where a pro se party's objections to a report and recommendation are 'conclusory or general,' or where a plaintiff 'simply reiterates his original arguments,' the report should be reviewed only for clear error." *DeGrate v. Broad. Music, Inc.*, No. 12-CV-1700, 2013 WL 639146, at *2 (S.D.N.Y. Feb. 20, 2013) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)).

## IV. Discussion

### A. *Objections*

Plaintiff makes fourteen separate objections in his filing. (Objs. 1.) I address each objection below.

#### 1. First and Second Objections

First, Plaintiff claims that Magistrate Judge Lehrburger erred in dismissing his civil RICO claims, relying on *Lateral Recovery LLC v. Queen Funding LLC*, No. 21-CV-9607, 2022 WL 2829913 (S.D.N.Y. July 20, 2022), to support his argument that his civil RICO claims are viable. (Objs 2–4.) Plaintiff also cites *Funding Metrics LLC v. Decision One Debt Relief LLC,* No. 18-81061-CV, 2019 WL 3759111 (S.D. Fla. Aug. 9, 2019), in support of his argument that RICO claims are cognizable. (Objs. 4–5.)

In order for a plaintiffs to allege civil RICO claims they must "plead at least two predicate acts . . . and that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995). In addition, "a plaintiff must show that he was injured by defendants' (1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). "RICO offenses may be predicated on a single instance of collection of unlawful debt, as well as on a pattern of racketeering activity." *United States v. Grote*, 961 F.3d 105, 119 (2d Cir. 2020). As relevant here, an unlawful debt is one which "was incurred in connection with . . . the business of lending money or a thing of value at a rate usurious under State or Federal law." 18 U.S.C. § 1961(6).

Another requirement of a RICO claim is that a defendant, or "RICO person," must be legally and structurally separate and distinct from the RICO enterprise. *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994). "A corporate entity can be sued as a RICO 'person' or named as a RICO 'enterprise,' but the same entity cannot be both the RICO person and the enterprise." *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017). In *Lateral Recovery v. Queen Funding*, the court found that the plaintiff plausibly alleged a separate RICO person and RICO enterprise. *See* No. 22-CV-2170, 2024 WL 216533, at *13 (S.D.N.Y. Jan. 19, 2024) ("persons" alleged were "the Isaacov brothers," while the enterprise was "an association-in-fact enterprise consisting of Funderz, the four Isaacov brothers, and the John and Jane Doe investors"). Courts in this Circuit have made clear that the analysis of the viability of a RICO claim "is different . . . where the defendant person is a natural person who works for a corporation instead of the corporation itself." *Palatkevich v. Choupak*, No. 12-CV-1681, 2014 WL 1509236, at *14 (S.D.N.Y. Jan. 24, 2014) (internal quotation marks omitted).

Here, Hubbuch alleges that Funding Metrics is both the RICO person, (FAC ¶ 67 ("Defendant Funding Metrics constitutes a centralized legal entity exercising command and control over a coordinated association-in-fact enterprise" (cleaned up))), and the RICO

enterprise, (*id.* ¶ 71 (predicate acts of RICO enterprise alleged are "functional arteries of Defendant Funding Metrics' predatory business model")). Although Plaintiff gestures in the Amended Complaint toward a separate enterprise, claiming that the RICO "enterprise does not consist of isolated actors or parallel businesses," to the extent that this allegation is meant to demonstrate that the RICO enterprise is not Funding Metrics' business, it is conclusory and speculative. Such an allegation does not plausibly allege the existence of a RICO enterprise separate from Funding Metrics and its business model. *See Riverwoods Chappaqua Corp.*, 30 F.3d at 344 ("[B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented."). That Hubbuch is doing little more than attempting to circumvent the distinctiveness requirement is belied by the fact that each of the predicate acts alleged by Plaintiff is part and parcel of Funding Metrics LLC's regular course of business. (*See* Compl. ¶ 70 ("Electronic communications—via email, phone, and web portal—were used to induce Plaintiff into a criminally usurious and deceptively structured merchant cash advance agreement"), *id.* ("Written contracts, debt enforcement documents, and judgment communications were transmitted across state lines using standard postal services and interstate couriers, forming part of the enterprise's effort to obscure the true nature of the debt"), *id.* ("The agreement in Plaintiff's case imposed an effective APR exceeding 106%, far surpassing the 25% criminal usury cap"), *id.* ("Enterprise operatives pressured Plaintiff to abandon legal claims and misrepresented the agreement's enforceability").) This, in and of itself, warrants dismissal of this claim. *See Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc.,* 745 F. Supp. 2d 343, 352 (S.D.N.Y. 2010) (dismissing complaint for failing to allege distinctiveness when "[t]he alleged racketeering activity constituted [the corporate defendant and RICO 'person's'] 'regular way of

conducting' its business, and did not go beyond the regular affairs of the corporation." (quoting *Riverwoods Chappaqua Corp.*, 30 F.3d at 345)). Therefore, Plaintiff's citation to *Lateral Recovery v. Queen Funding* is misplaced and the court's holding there does nothing to dissuade me from adopting the Report's conclusions, (*see* Rep. 47 ("The FAC fails to plausibly assert the predicate acts necessary for racketeering activity.")), that Plaintiff fails to plead a RICO claim. *See Reed Const. Data.*, 745 F. Supp. 2d. at 351–52 (discussing the different standards with regard to "distinctiveness" when it comes to corporate RICO persons and natural RICO persons). Hubbuch's First Objection is OVERRULED.

Next, Hubbuch cites *Funding Metrics, LLC v. Decision One Debt Relief LLC*, an out-of-circuit district court case in which a motion to dismiss a RICO claim against a cash advance funder was granted. 2019 WL 3759111, at *8. Although the court's decision in *Decision One Debt Relief LLC* is not binding on me, I find that it, in fact, supports the conclusion that Plaintiff's claims should be dismissed. *Id.* at *2 (finding that plaintiff "has not established the necessary degree of distinctness between the 'persons' comprising the enterprise and the enterprise itself"). Hubbuch appears to argue that because Funding Metrics appeared as a plaintiff in that case in the Southern District of Florida and brought civil RICO claims, that this should persuade me to reject the Report's recommendation that I dismiss his civil RICO claims. (Objs. 4–5.) However, Funding Metrics failed to persuade the court in *Decision One Debt Relief LLC* that it had plausibly alleged a RICO claim, and I fail to see how the dismissal with prejudice of Funding Metrics' RICO claim there supports the existence of a RICO claim here. 2019 WL 3759111, at *8. Nor can the fact that a party brings a category of claim in one unrelated lawsuit preclude it from asserting defenses against the same category of issues in an entirely separate suit. The Circuit has explained that issue preclusion only applies to bar "relitigation of an issue

when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365, 371 (2d Cir. 2023) (quoting *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021)).

Here, although the Funding Metrics brought the same kind of claim as a plaintiff that it now seeks to defend against as a defendant, Hubbuch has not met his burden to show that the court in *Decision One Debt Relief LLC* decided an "identical issue" to that before me today. *See In re Google Digital Advert. Antitrust Litig.*, No. 21-CV-3446, 2025 WL 3012840, at *3 (S.D.N.Y. Oct. 27, 2025) ("The burden of proof rests with the party seeking preclusion on all elements except the full and fair opportunity to litigate"). The *Decision One Debt Relief LLC* decision involved different contracts, different agency relationships, and different injuries suffered by plaintiffs in that case, all of which were fundamental to the court's decision there. *See* 2019 WL 3759111, at *3–8 (analyzing all three of these factors). Therefore, I cannot say that the issues presented in that case were "substantially the same as those presented by [the later] action," such that issue preclusion applies. *Zherka v. City of New York*, 459 Fed. App'x 10, 13 (2d Cir. 2012) (summary order). That an entity brings a category of claims as a plaintiff and also has the same category of claims brought against them as a civil defendant is both entirely ordinary and legally irrelevant. Hubbuch's Second Objection is OVERRULED.

### 2. Third Objection

Next, Plaintiff argues that, because Funding Metrics filed a turnover motion in state court taking ownership over Plaintiff's claims, its current litigation position is judicially estopped and must be rejected. (Objs. 6–8.) The turnover motion was filed on July 14, 2025, requesting that Funding Metrics be able to take ownership of all of Plaintiff's claims in this litigation and two others "in partial satisfaction" of the judgment entered against Hubbuch and in favor of Funding Metrics in the state court litigation. (Doc. 122-3 at 1.) As an initial matter, the turnover motion does not do what Hubbuch claims it does. Rather, it states with respect to the current action that, "[t]he foregoing actions do not appear to have any substantial merit, but they may possess some nuisance settlement values if promptly acted upon," and that "[w]hile the three claims that Hubbuch has filed appear, at best, to be worth a nuisance sum of no more than a few hundred to a few thousand dollars, they are nevertheless an asset available for Plaintiff's judgment enforcement herein." (*Id.* at 4; *see also Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001) ("[M]ost courts have continued to draw a distinction between post-judgment proceedings to collect an existing judgment and proceedings . . . that raise an independent controversy with a new party in an effort to shift liability.").)

Further, as with his Second Objection, Plaintiff misunderstands principles of estoppel and preclusion. Here, Plaintiff appears to argue that Funding Metrics is barred by claim preclusion rather than issue preclusion. (*See* Objs. 7.) "[J]udicial estoppel may be applied to bar a party from asserting a factual position in a given proceeding only when that party advanced a clearly inconsistent position in a prior proceeding and that inconsistent position was adopted by the court in some manner." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997). However, to the extent that Funding Metrics can be said to have taken a "position" in the

turnover motion, it is that Plaintiff's claims "do not appear to have any substantial merit." (Doc. 122-3 at 4.) This is not inconsistent with Funding Metrics seeking sanctions in the instant matter. *See, e.g.*, *Jones v. Combs*, 759 F. Supp. 3d 534, 539 (S.D.N.Y. 2024) ("[B]ad faith" in support of sanctions "can be established by inference from completely meritless actions."); *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999) (explaining that a claim is only "colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." (internal quotation marks omitted)). Because Funding Metrics' attempt to take ownership of Hubbuch's claims while acknowledging that they did "not appear to have any substantial merit," (*see* Doc. 122-3 at 4), is not clearly inconsistent with its motion for sanctions in this case, I find that judicial estoppel acts as no bar to Funding Metrics' motion. Plaintiff's Third Objection is OVERRULED.

**3. Fourth Objection**

Plaintiff also asserts that he provided legal justification for adding Funding Metrics as a Defendant by filing a proposed amended complaint, (Doc. 67), which was docketed after Magistrate Judge Lehrburger's report and recommendation, (Doc. 64), which I subsequently adopted in full in my Opinion, (Doc. 73). However, Plaintiff ignores the fact that Magistrate Judge Lehrburger granted leave to amend for the limited purpose of curing the defects in Plaintiff's RICO claims against Capital One. (Rep. 14–17.) As Magistrate Judge Lehrburger concluded, "Hubbuch provides no legal justification for his thorough recasting of the FAC." (*Id.* at 16.) The Report appropriately analogized the facts here to those in *Roosevelt Road Re, Ltd. v. Subin*, a case from the Eastern District of New York case in which Judge Hector Gonzalez rejected a second amended complaint that "add[ed] 84 pages, 262 paragraphs, four new counts, [and] five new defendants." No. 24-CV-5033, 2025 WL 3049937, at *2 (E.D.N.Y. Sept. 16,

2025). In this case, although only one new defendant was added, Hubbuch added twelve new counts. (*See* Doc. 67.) Here, as in *Roosevelt Road*, "[l]eave to amend was not a license to recast the case," and the Amended Complaint should be dismissed because the new complaint "in effect, amounts to filing a new lawsuit." 2025 WL 3049937, at *3.

In my Opinion, I adopted in full Magistrate Judge Lehrburger's thorough twenty-nine-page report and recommendation from June 11, 2025 which recommended dismissal with leave to amend for the sole purpose of curing the deficiencies identified in the initial complaint. (Op. 5 ("I ADOPT Magistrate Judge Lehrburger's Report & Recommendation in full. . . . Hubbuch is granted leave to amend within thirty days, with the understanding that any amendment must cure the deficiencies identified in the Report and state a plausible claim for relief").) My Opinion did not authorize the filing of what amounts to an entirely separate set of grievances with an entirely new party. *See Palm Beach Strategic Income, LP v. Salzman,* 457 F. App'x 40, 43 (2d Cir. 2012) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." (collecting cases)) (summary order). Magistrate Judge Lehrburger correctly concluded that this alone would warrant dismissal. Plaintiff's Fourth Objection is OVERRULED.

**4. Fifth and Sixth Objections**

Plaintiff also claims that Magistrate Judge Lehrburger incorrectly found that the *Rooker-Feldman* doctrine barred his suit, arguing that his federal claims "allege two distinct categories of independent injury, neither of which was caused by the May 2025 state court judgment," (Objs. 10–14), and that post-judgment activity in the state court cases causes *Rooker-Feldman* not to apply, (*id.* at 14–15). The Circuit has held that there are four predicates for the application

of the *Rooker-Feldman* doctrine: "(1) 'the federal-court plaintiff must have lost in state court[;]' (2) 'the plaintiff must complain of injuries caused by a state-court judgment[;]' (3) 'the plaintiff must invite district court review and rejection of that judgment[;]' and (4) 'the state-court judgment must have been rendered before the district court proceedings commenced.'" *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (alterations in original) (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005), *abrogated on other grounds by T.M. v. Univ. of Maryland Medical Sys. Corp.*, No. 25-197, 2026 WL 1751823 (June 18, 2026)). Plaintiff's Fifth Objection focuses on the second prong, and the Sixth Objection relates to the third prong.

Plaintiff points to a series of enforcement actions taken by Funding Metrics after the state court judgment against him, but to the extent that Plaintiff claims to have been "injured" by them, these enforcement actions were indubitably "caused" by the judgment itself. Plaintiff complains that the judgment itself does not ipso facto "command" the subsequent actions taken by Funding Metrics, but that is not the relevant inquiry. (Objs. 12.) Hubbuch cites three out-of-circuit cases in support of his position that *Rooker-Feldman* does not apply, but these decisions, in addition to not being binding on me, are all distinguishable.

In *Vanderkodde v. Mary Jane M. Elliot, P.C.*, the court held that the *Rooker-Feldman* doctrine did not apply when plaintiffs' injuries stemmed from "writs of garnishment" issued by a state court, rather than the judgments against them. 951 F.3d 397, 403 (6th Cir. 2020). Here, not only is there no such writ, the injury complained of in the Amended Complaint undeniably is a result of Plaintiff's loss in state court. (*See* Rep. 39–40 n.16 (collecting references in the Amended Complaint to injury caused by Plaintiff's loss in state court).) Similarly, in *English v. Crochet*, the Fifth Circuit found that *Rooker-Feldman* did not apply when Plaintiff brought an

independent defamation claim based on claims made during sanctions proceedings. 154 F.4th 369, 373 (5th Cir. 2025). No such independent cause of action presents itself here. Rather, Hubbuch asks me to rule on the validity of the state court judgment against him. (*See* Rep. 40 ("The Funding Metrics Judgment embodies the state court's determination that the Funding Metrics Agreement is valid and enforceable. For Hubbuch to prevail in the instant action, the Court would have to find that the Funding Metrics Agreement is ***not*** valid and enforceable – precisely the opposite of what the state court determined in the Second Court Action." (emphasis in original)).) Finally, *Peck v. First Tech. Fed. Credit Union*, is similarly inapposite because the court concluded that the plaintiff did "not seek the review and rejection of the state court's" order, but rather only raised grievances with post-judgment activities, such as the "state court's debt-collection and garnishment proceedings." No. 25-2360, 2026 WL 281029, at *2 (7th Cir. Feb. 3, 2026).

Here, despite Hubbuch's attempt in his objections to refashion his grievances to only cover post-judgment activities, it is apparent from the face of his Amended Complaint, (*see* FAC ¶¶ 3, 10–11, 17, 51–53, 56, 74, 79, 130, 148), and his briefing, (Doc. 94 ¶¶ 50–54), that he seeks "review and rejection" of the state court order, as his claims are premised on the Agreement being unenforceable. Although Hubbuch argues that in making the Objections, "he does not seek to vacate the judgment" rendered in the state court, (*see* Objs. 13 (emphasis omitted)), any judgment in his favor by me would necessarily call into question the validity of the state court's judgment, even if intervening actions directly caused by the state-court judgment also imposed injury upon him. *But see Hoblock,* 422 F.3d at 88 ("[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or

left unpunished by it," and thus is precluded by *Rooker-Feldman*.). Plaintiff's Fifth Objection, therefore, fails.

Plaintiff's Sixth Objection fares no better. The state court case that Plaintiff seeks to effectively challenge through his Amended Complaint culminated in a May 12, 2025 judgment. (Rep. 9.) Plaintiff filed his Amended Complaint on July 20, 2025. (Rep. 11.) Plaintiff argues that an attorney's fees award in September 2025 and a post-judgment enforcement action in January 2026 render the May 12, 2025 judgment not "final" in some capacity. (*See* Objs. 14–15.) Not so. It is black letter law that "the pendency of a ruling on an award for fees and costs does not prevent, as a general rule, the merits judgment from becoming final." *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers*, 571 U.S. 177, 179 (2014). The same principle applies with a motion to enforce a judgment under New York CPLR § 5225, which is axiomatically brought to enforce a "judgment." Indeed, Section 5225 is entitled "Enforcement of Money Judgments," and such "postjudgment decisions necessarily follow a final judgment." *Amara v. Cigna Corp.*, 53 F.4th 241, 250 (2d Cir. 2022) (quoting *Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co.*, 768 F.3d 1320, 1325 (11th Cir. 2014)). Therefore, Plaintiff's Sixth Objection cannot succeed, and the *Rooker-Feldman* doctrine bars Plaintiff from moving forward with the Amended Complaint.

Plaintiff's Fifth and Sixth Objections are OVERRULED.

**5. Seventh Objection**

Hubbuch also alleges that res judicata does not apply because he did not have a full and fair opportunity to litigate the May 2025 state court default judgment. (Objs. 16–17.) I reject this argument for the reasons outlined in the Report—the fact that a collateral litigation was the result of a default does not defeat the principle of res judicata. (Rep. 43 ("That the Funding Metrics Judgment came after Hubbuch and Memphis Seoul defaulted does not make res judicata any less applicable." (collecting cases)).) With regard to this objection, Plaintiff appears to again conflate issue preclusion, or collateral estoppel, with res judicata, or claim preclusion. The case Plaintiff cites, *Kaufman v. Eli Lilly & Co.*, applies the "full and fair opportunity" element of the issue preclusion, or collateral estoppel, test. 65 N.Y.2d 449, 455 (N.Y. 1985); *see also supra* § IV.A.1. This is distinct from claim preclusion, or res judicata, which is adjudicated through a different inquiry. *See supra* § IV.A.2.

Magistrate Judge Lehrburger found that the latter of these doctrines barred Plaintiff's claims here because the state court had decided, through a default judgment, that the claims arose "out of the same transaction or series of transactions as the" current claim before the court, as each arose from the Agreement between Hubbuch and Funding Metrics. (Rep. 41–43 (quoting *Beijing Neu Cloud Oriental System Technology Co., Ltd. v. International Business Machines Corp.*, 110 F.4th 106, 114 (2d Cir. 2024).) It is axiomatic that, under New York law, "[r]es judicata applies to judgments obtained by default." *In re 231 Fourth Ave. Lyceum, LLC*, 513 B.R. 25, 32 (Bankr. E.D.N.Y. 2014) (citing *Kelleran v. Andrijevic*, 825 F.2d 692, 694–95 (2d Cir. 1987)); *see also In re Richmond*, 513 B.R. 34, 40 (Bankr. E.D.N.Y. 2014) (same); *Clarkstown Recycling Ctr., Inc. v. Parker, Chapin Flattau & Klimpl, LLP*, 1 F. Supp. 2d 327, 329 (S.D.N.Y. 1998) (same). Thus, Plaintiff's Seventh Objection is OVERRULED.

**6. Eighth, Thirteenth, and Fourteenth Objections**

Plaintiff also puts forward the argument that Magistrate Judge Lehrburger erred in dismissing his claim against Funding Metrics under Rule 12(b)(6) because the Amended Complaint pleaded "documented financial injuries and statutory violations that occurred in 2024—entirely independent of, and months prior to, the May 2025 state-court judgment." (Objs. 17–18.) He also asserts that Magistrate Judge Lehrburger erred in dismissing his claims against Capital One because Capital One should be held liable for the purported torts of its employee Mohammed Alkhatib, (Objs. 25–26), and that Magistrate Judge Lehrburger erred in applying the prohibition on affirmative usury claims to him, (*id.* at 26–27). However, each of these arguments has been raised before by Hubbuch and rightfully rejected by Magistrate Judge Lehrburger. (*See* Rep. 21 ("Hubbuch fails to allege facts through which Alkhatib's conduct can be attributed to Capital One."), 45–46 ("[B]usiness entities, like Memphis Seoul, and guarantors of business obligations, like Hubbuch, cannot affirmatively sue for usury but instead may only assert criminal usury as an affirmative defense."), 46 ("Hubbuch failed to assert a plausible RICO claim against Capital One because he had not alleged facts sufficient to support Capital One's vicarious liability for the Alkhatib's actions.").) "If a party . . . simply relitigates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Antrobus*, 2016 WL 5390120, at *1; *see also Pena*, 2006 WL 2529771, at *1. Finding no clear error in Magistrate Judge Lehrburger's determinations as to these points, I reject these arguments.

Plaintiff also argues that he is entitled to de novo review of the report because the injuries that he claims support his EFTA, TILA, Civil RICO, NY GBL § 359, and unjust enrichment claims occurred in 2024, prior to the entry of the state court judgment in 2025. (Objs. 17–18.)

However, the Report found that Plaintiff's unjust enrichment claims fail as a matter of law because "Hubbuch authorized the daily ACH withdrawals and he apparently did not monitor the balance and activity of the Memphis Seoul accounts or exercise his right to instruct Capital One to decline the transactions that would take the accounts into overdraft status." (Rep. 31 (citations omitted).) Thus, his claims fail to meet the third prong of the unjust enrichment test, which requires that "equity and good conscience militate against permitting defendant to retain what [the] plaintiff is seeking to recover." (*Id.* (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).) Further, because the contract between Hubbuch and Funding Metrics is "valid and enforceable," any unjust enrichment claim is "precluded" by the existence of a valid contract covering the same subject matter as the unjust enrichment claim. (*Id.* at 32 (collecting cases).) Nothing in Plaintiff's objections suggests that Magistrate Judge Lehrburger "ignore[ed] the concrete factual allegations detailed in the Amended Complaint," in reaching this conclusion. (*But see* Objs. 17.)

Further, the Report's conclusions that there was nothing "materially misleading" in the Agreement, a necessary predicate for any NY GBL § 359 claim, (*see* Rep. 33–34 (quoting *Orlander v. Staples, Inc.*, 802 F. 3d 239, 300 (2d Cir. 2015))), that the Agreement provides for a line of "credit extended for business, commercial, or agricultural purposes," rendering it beyond the ambit of TILA, (*see id.* at 48 (quoting *Mauro v. Countrywide Home Loans, Inc.*, 727 F. Supp.2d 145, 153 (E.D.N.Y. 2010))), and that the EFTA claims must be dismissed because the statute "does not apply to accounts that are used primarily or solely for commercial purposes," (*id.* at 49 (quoting *Fischer & Mandell LLP v. Citibank, N.A.*, No. 09-CV-1160, 2009 WL 1767621, at *3 (S.D.N.Y. June 22, 2009))), are likewise correct and thus evince no clear error. I addressed Plaintiff's objections to the Report's conclusions regarding his Civil RICO claims

above. *See supra* § IV.A.1. Plaintiff does not appear to dispute these findings, merely arguing in a conclusory and speculative manner that there are facts sufficient to make out these claims. *Jones*, 2012 WL 1592190, at *1 (when "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments," the court will review the report only for clear error). Plaintiff's focus on the fact that the Agreement predates the state court judgment is not only tautological, as the state court suit was based on the underlying Agreement, but it also erroneously conflates the "injury" for *Rooker-Feldman* purposes with the "injury" that he claims to have suffered as a result of the state court action in the first instance.

For these reasons, I review Magistrate Judge Lehrburger's conclusions that Plaintiff fails to state a claim under Rule 12(b)(6) against Funding Metrics and that Alkhatib acted outside of the scope of his agency relationship with Capital One only for clear error. Finding none, I ADOPT Magistrate Judge Lehrburger's findings and OVERRULE Plaintiff's Eighth, Thirteenth, and Fourteenth Objections.

#### 7. Ninth Objection

Next, Plaintiff claims that because this case was screened by the pro se office under 28 U.S.C. § 1915 and was not dismissed, that he cannot now be sanctioned under Rule 11, that the Report goes beyond the scope of the Amended Order of Reference, and that the mere length of Magistrate Judge Lehrburger's report countermands the finding that his suit is frivolous. (Objs. 18–20.) These arguments all fail for the reasons outlined below.

First, just because a plaintiff's complaint is screened under 28 U.S.C. § 1915 and survives the low bar of sua sponte dismissal under that statute does not mean that a plaintiff may never be sanctioned over the course of their litigation. *See Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) ("[A] district court should look with a far more forgiving eye in examining whether a

complaint rests on a meritless legal theory for purposes of section 1915(d) than it does in testing the complaint against a Rule 12(b)(6) motion."). Furthermore, much of the conduct for which Plaintiff is being sanctioned occurred after the complaint was initially screened under § 1915. (*See* Rep. 61–62 (discussing how the Plaintiff "threaten[ed] the arbitrator and arbitration forum director" and otherwise "demonstrated vindictive and threatening behavior").) Finally, Plaintiff's Amended Complaint has almost nothing to do with the initial complaint that survived the limited inquiry of § 1915. (*See* Rep. 17 ("The FAC seeks to turn what initially was a RICO claim and RICO conspiracy claim against Capital One into a 'sprawling' panoply of thirteen state and federal causes of action (collectively between Capital One and Funding Metrics) against multiple parties that do not even include Hubbuch's original claim.").) The first portion of Plaintiff's Ninth Objection, therefore, necessarily fails.

Second, on March 4, 2025, I issued the Amended Order of Reference to Magistrate Judge Lehrburger for general pretrial management and for a report and recommendation on all dispositive motions. (Doc. 78.) Accordingly, on February 10, 2026, Magistrate Judge Lehrburger issued the Report on a series of dispositive motions with recommendations for me regarding disposition. (*See generally* Rep.) Although "[t]he Second Circuit has not resolved the issue of whether a magistrate judge has the authority to impose sanctions under Rule 11," *Grecia v. Brass Lion Ent., Inc.*, No. 25-CV-1484, 2026 WL 540539, at *1 n.1 (S.D.N.Y. Jan. 2, 2026) (citing *Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010)), *report and recommendation adopted sub nom.*, 2026 WL 738578 (S.D.N.Y. Mar. 16, 2026), magistrate judges will typically issue a decision relating to a litigation bar or filing injunction in the form of a report and recommendation, *see id.*; *see also Brady v. Goldman,* No. 16-CV-2287, 2017 WL 496083, at *1 (S.D.N.Y. Feb. 3, 2017) (adopting recommendation of a filing injunction when legal test was

met). Therefore, there was nothing procedurally improper about the Report or any manner in which it exceeded the scope of the Amended Order of Reference.

Finally, I cannot support Plaintiff's unevidenced speculation that the mere length of Magistrate Judge Lehrburger's Report was any indication of the merit of Plaintiff's litigation posture. As noted in the Report, "Plaintiff is a vexatious litigant" whose voluminous and prolific filings have required this court to expend its limited resources to address and respond to his claims. (*See* Rep. 63.) That this court has not abdicated its duty to address each and every one of Plaintiff's faulty and erroneous arguments advanced over the course of this litigation should not be seen as a reflection of whether his claims have merit, but rather as an indication that Magistrate Judge Lehrburger and I take seriously the "obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

In sum, Plaintiff's Ninth Objection fails and is OVERRULED.

**8. Tenth and Eleventh Objections**

Next, Plaintiff takes umbrage with Magistrate Judge Lehrburger's purported characterization of his litigation track record as a "serial loser" and argues that he has had success in previous litigations. (Objs. 20–22). Nowhere in the Report does the term "serial loser" appear.[2] Nor was the Report's "characterization" of *Hubbuch v. Small* misleading. (*See id.*) The footnote in Magistrate Judge Lehrburger's Report recapping Hubbuch's pattern of litigation merely states that the case was dismissed "sua sponte," (Rep. 2 n.1), not that it was "frivolous," or "vexatious[]" in and of itself, (*but see* Objs. 21).

[2] It is possible that Hubbuch's mistaken reference to this phrase is a "phantom citation" generated by artificial intelligence; a tool Hubbuch acknowledged having used in another lawsuit. (*See* Rep. 59 (citing *Hubbuch v. Helbraun & Levey LLP*, No. 25-CV-0717, 2025 WL 1994562, at *11 (E.D.N.Y. July 17, 2025)).)

Not only is Plaintiff incorrect factually, but his arguments about his litigation record are also beside the point. This objection consists merely of Plaintiff quibbling with Magistrate Judge Lehrburger's characterization of his litigation history and does not cut against any of his dispositive findings with regard to Plaintiff's suit. *See Packard v. City of New York*, No. 15-CV-7130, 2020 WL 1467127, at *4 (S.D.N.Y. Mar. 25, 2020) (where objection only goes to "dicta [that] does not undermine the Report's recommendation," the court found "no reason to reject or modify the Report's proposed finding." (quoting *Severstal Wheeling, Inc. v. WPN Corp.*, No. 10-CV-954, 2014 WL 2959014, at *6 n.8 (S.D.N.Y. Apr. 11, 2014))). This alone merits dismissal of Plaintiff's Tenth Objection.

The same analysis holds for Plaintiff' s Eleventh Objection, where Plaintiff claims that Magistrate Judge Lehrburger's references to his sophistication created a "perverse incentive" and sent the wrong "message." (Objs. 22–23.) However, a careful review of Magistrate Judge Lehrburger's Report reveals that he did not base any of his dispositive findings on the level of Plaintiff's sophistication. As noted in the Report, "Rule 11 applies to pro se litigants." (Rep. 57 (quoting *Mantis Transp. v. Kenner*, 45 F. Supp. 3d 229, 253 (E.D.N.Y. 2014)).) There is no evidence from the face of the Report that Magistrate Judge Lehrburger did anything other than grant Hubbuch the special solicitude that our courts must provide to pro se litigants. Indeed, there are multiple examples of the Report providing such deference and treating Plaintiff more generously because of the absence of counsel. (*See* Rep. 51 (declining to "deem Hubbuch's claims abandoned" because "the cases on which Funding Metrics relies to support its argument for abandonment appear to be ones in which the plaintiff was represented by counsel"), 57 (collecting cases in support of the proposition that "pro se litigants often are afforded a wider

berth under Rule 11”).)[3]

To be sure, Hubbuch’s sophistication provided a “backdrop,” (*id.* at 60), for Magistrate Judge Lehrburger to perform his thorough and well-reasoned analysis, supported by ample caselaw, that Hubbuch engaged in four courses of conduct that warranted sanctions, (*id.* at 63–64). However, there is no indication that Magistrate Judge Lehrburger actually lessened the degree of solicitude due to Hubbuch here.[4] Hubbuch, in the course of his filings in this case, has repeatedly misrepresented facts, such as claiming that Funding Metrics’ sanctions motion was “retaliatory,” even though Funding Metrics had served Hubbuch with a safe harbor notice in advance of Plaintiff’s sanctions motion, (*id.* at 62–63), and “repeatedly asserting that the Court had already determined that Hubbuch’s state law claims were colorable,” even though neither Magistrate Judge Lehrburger nor I had ruled on any of Hubbuch’s claims against Funding Metrics, (*id.* at 61–62). He also has launched a campaign of vexatious and harassing litigation conduct, including by amending his complaint to introduce claims that he had already lost on in state court in hopes of obtaining a more favorable forum to litigate these failed claims, (*id.* at 60–61), suing Funding Metrics’ attorney for defamation, (*id.* at 61), threatening the arbitrator and arbitration forum director after his state claims were sent to arbitration as he had agreed in the Agreement, (*id.* at 61), and filing multiple frivolous letters in this litigation relating to, for

[3] I note that the Second Circuit has indicated that “a strong showing that a *pro se* litigant has acquired adequate experience more generally,” could “render special solicitude unnecessary.” *Sledge v. Kooi*, 564 F.3d 105, 109 (2d Cir. 2009). Because I find that Magistrate Judge Lehrburger has granted Plaintiff the appropriate degree of solicitude, I need not decide this question.

[4] The Second Circuit has explained that “the appropriate degree of special solicitude is not identical with regard to all *pro se* litigants.” *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). “[T]he degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented.” *Id.* Although there is no indication that Magistrate Judge Lehrburger actually granted any less solicitude to Hubbuch because of his sophistication, it bears mentioning that solicitude is not something meted out uniformly, but rather reflects a nuanced inquiry that depends on the facts of the case. In light of this direction from the Circuit, there was nothing improper about the Report’s approach here.

example, a purported "fraudulent marshals notice allegedly used for retaliation and intimidation," (Doc. 129 (cleaned up)), and Funding Metrics' "contradictory litigation positions," (Doc. 130). It was on these bases, rather than Hubbuch's litigation experience or track record, that Magistrate Judge Lehrburger appropriately found that an award of sanctions was appropriate. (*See* Rep. 59–64.)

Plaintiff's Tenth and Eleventh objections are OVERRULED.

### 9. Twelfth Objection

Finally, Plaintiff argues that the filing injunction recommended by the Report is unconstitutional and violates Plaintiff's due process rights. (Objs. 23–25.) I find that the filing injunction recommended by Magistrate Judge Lehrburger is appropriately tailored and does not violate Plaintiff's due process rights.

First, Plaintiff mischaracterizes Magistrate Judge Lehrburger's recommended filing injunction as a "permanent, nationwide bar." (Objs 24.) This is an inaccurate characterization. Instead, Magistrate Judge Lehrburger recommends "a limited" filing injunction "prohibiting Hubbuch from filing new actions or claims against Funding Metrics in federal court concerning the Agreement or the Funding Metrics Judgment." (Rep. 69–70.) Far from being "unconstitutionally overbroad," (*but see* Objs. 24), the injunction recommended by Magistrate Judge Lehrburger is appropriately tailored to prevent "Hubbuch's pursuit, for improper purposes, of meritless litigation about the Funding Metrics Agreement in the wake of Hubbuch's loss in state court," (Rep. 70). Magistrate Judge Lehrburger reviewed the scope of Funding Metrics' sanctions motion and recommends denying it in part, explaining that he was "not inclined to blindly issue an order" granting broad sanctions. (*Id.* at 65.) I agree with Magistrate Judge Lehrburger that the limited-in-scope injunction that he recommends is a sufficient sanction to

deter Plaintiff's vexatious litigation conduct without infringing on his constitutional rights. Further, and contrary to Hubbuch's claim, Magistrate Judge Lehrburger did analyze the "five-factor test required by *Safir v. U.S. Lines, Inc.*, 792 F. 2d 19, 24 (2d. Cir. 1986)." (*See* Rep. 65 ("Courts consider a number of factors in determining an appropriate sanction (monetary or otherwise), including" the *Safir* factors), 70 (citing *Safir*).)

Finally, Plaintiff has had both notice of Magistrate Judge Lehrburger's recommendation that a filing injunction should issue and an opportunity to respond to this recommendation, as evidenced by his voluminous objections to the Report. (*See generally* Objs.) Courts, when issuing sanctions sua sponte, will ensure that they "give plaintiffs a full opportunity to be heard before imposing any sanctions," often including a hearing. *Ex'r of New York Est. of Kates v. Pressley & Pressley, P.A.*, No. 11-CV-3221, 2013 WL 495415, at *2 (E.D.N.Y. Feb. 7, 2013). However, where, as here, sanctions are not issued sua sponte, but rather pursuant to a motion from the opposing party, the sanctioned party will have had the opportunity to be heard by virtue of his papers filed in opposition to the sanctions motion. *See Li v. Ali Baba Grp. Holding Ltd.*, No. 19-CV-11629, 2021 WL 4084574, at *5 (S.D.N.Y. Sept. 7, 2021) ("In light of the fact that [Defendant] moved for sanctions, including a filing injunction, on the same day that it filed its motion to dismiss, Plaintiff was provided with notice and an opportunity to be heard when he filed his opposition to [Defendant's] motion for sanctions"). Indeed, this principle applies even more strongly here, as I have granted Plaintiff's request for leave to file excess pages in his objections in light of the seriousness with which the federal court system treats sanctions, (Doc. 134), which also provided an opportunity to be heard on the sanctions recommendation from Magistrate Judge Lehrburger.

I have now reviewed each of Hubbuch's objections thoroughly and on a case-by-case

basis and determined that none of them, individually or in aggregate, do anything to dissuade me from adopting Magistrate Judge Lehrburger's recommendation in full and imposing a limited filing injunction.

Plaintiff's Twelfth Objection is OVERRULED.

**B. *Leave to File a Sur Reply***

Plaintiff's arguments raised in his motion to file a reply brief in support of his objections are unavailing, (*see* Doc. 140), thus rendering his motion for leave to file a reply futile. I have already granted Plaintiff's motion for leave to file excess pages in objecting to the Report. (*See* Doc. 134.) Here, the arguments that Plaintiff would attempt to raise on his reply brief, i.e., arguing that payments made by Memphis Seoul suffice to confer Hubbuch with standing, making his civil RICO claims viable, and reiterating the due process grievances that form several of his underlying objections, do little more than rehash and relitigate assertions already rejected and issues already decided by both Magistrate Judge Lehrburger and me. (*See supra* § IV.A.9 (addressing Plaintiff's argument that the filing injunction violated his due process rights), *see also supra* § IV.A.1 (discussing alternative substantive reason why Plaintiff's civil RICO claim fails independent of the question of injury and in addition to the preclusion and abstention reasons discussed in the Report at pages 38–44 and 46–47).)

Therefore, I find that any reply in support of Plaintiff's objections would be unnecessary and futile, and so does not warrant deviating from the ordinary practice of courts in this Circuit, which to not grant leave to file such additional papers. *See AA Med. P.C. v. Almansoori*, No. 20-CV-03852, 2023 WL 4073772, at *2 (E.D.N.Y. June 19, 2023) ("granting leave to a litigant to file such [additional papers] is indeed rare"*)*; *SEC v. Xia*, No. 21-CV-5350, 2022 WL 2784871, at *1 (E.D.N.Y. July 15, 2022) ("Courts in this circuit grant leave to file [additional papers]

sparingly."); *United States v. Int'l Bus. Machs. Corp.*, 66 F.R.D. 383, 384 (S.D.N.Y. 1975) ("The court believes that [additional] reply papers should be viewed as the exception and not the rule."). "Though many arguments might last forever, briefing has to end somewhere." *Mem'l Hermann Healthcare Sys. v. State St. Bank and Trust Co.,* No. 08-CV-5440, 2010 WL 3664490, at *2 n.2 (S.D.N.Y. Sept. 17, 2010). There is no need for additional briefing.

Plaintiff's motion for leave to file a reply brief in support of his objections is DENIED.

## V. <u>Conclusion</u>

I ADOPT Magistrate Judge Lehrburger's Report in full. Thus, Capital One's motion to dismiss is hereby GRANTED. Funding Metrics' motion to dismiss is GRANTED. Funding Metrics' motion for sanctions is GRANTED IN PART and DENIED IN PART. Plaintiff's motion for leave to file a sur-reply is DENIED. Plaintiff's motion for sanctions is DENIED. Plaintiff's motions for sanctions and to disqualify Funding Metrics' attorney are DENIED as moot.[5]

The Clerk of Court is respectfully directed to close docket numbers 82, 89, 102, 107, 111, and 140 and terminate this action. In addition, a limited filing injunction shall be entered requiring Plaintiff to seek leave from this Court before filing any new action or claims against Funding Metrics about the Agreement or the May 12, 2025 state court judgment against him in any federal court. (*See* Rep. 72.)

---

[5] Plaintiff made no specific objections to Magistrate Judge Lehrburger's conclusion that the disposition of the other motions at issue rendered the motion for disqualification of Funding Metrics' attorney moot, so I review Magistrate Judge Lehrburger's findings with regard to this issue only for clear error. *Batista v. Walker*, No. 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of a magistrate judge's report to which no specific objection is made, so long as those sections are not facially erroneous." (alterations adopted and internal quotation marks omitted)). I am satisfied that there is no clear error with regard to Magistrate Judge Lehrburger's conclusion that the pending motion for disqualification of Funding Metrics' attorneys is moot. (*See* Rep. 71 n. 26 ("As the Court has previously explained, Funding Metrics is entitled to pursue enforcement of the Funding Metrics Judgment. Hubbuch's displeasure with those efforts does not make them sanctionable.").)

The Clerk of Court is respectfully instructed to mail a copy of this Order to the pro se plaintiff.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: September 25, 2026
New York, New York

Vernon Broderick

Vernon S. Broderick
United States District Judge